**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CLIFF O. HANSON,**

       **Petitioner,**

**vs.**                                                    **Case No. 4:13cv16-WS/CAS**

**JULIE L. JONES, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,[1]**

       **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On January 8, 2013, Petitioner Cliff O. Hanson, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  On January 27, 2014, Respondent filed an answer, with exhibits.  Doc. 28.  Petitioner filed a reply on March 31, 2014.  Doc. 32.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has

---

[1]The Clerk of Court shall substitute Julie L. Jones as Secretary of the Florida Department of Corrections in place of Michael D. Crews.  Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

determined that no evidentiary hearing is required for disposition of this matter.  *See*

Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to

federal habeas relief, and the amended § 2254 petition should be denied.

### State Court Proceedings

By information filed June 30, 2011, the State of Florida charged Petitioner Cliff O.

Hanson with two counts in the Second Judicial Circuit, Leon County, case number 11-

CF-1748, in connection with events that took place on or about June 4, 2011:  (1)

possession of a firearm by a convicted felon, a second degree felony, in violation of

section 790.23(1)(a), Florida Statutes; and (2) driving while license suspended or

revoked, a second degree misdemeanor, in violation of section 322.34(10)(b)1., Florida

Statutes.  Doc. 28 Ex. A at 13-14.  On March 9, 2012, Hanson proceeded to a jury trial

on the first count, and he was represented by counsel.  *Id.* Ex. D (trial transcript).  After

the State rested, the judge heard, outside the presence of the jury, a defense motion to

suppress the firearm found in Hanson's vehicle; the judge denied the motion.  *Id.* at 92-

100.  The jury found Hanson guilty.  *Id.* at 158; *see id.* Ex. A at 121.  The court

sentenced him to 48 months in prison.  *Id.* Ex. A at 125-31, Ex. D at 165.

Hanson appealed his conviction and sentence to the First District Court of Appeal

(DCA), assigned case number 1D12-1630.  *Id.* Ex. E.  Hanson filed motions to

discharge counsel due to conflict, which the First DCA denied.  *Id.*  The record was

completed and filed.  *Id.*  On May 18, 2012, Hanson's counsel filed a motion to withdraw

as counsel, which the First DCA granted.  *Id.*  Hanson's new counsel thereafter filed a

notice of appearance as well as supplemental record. *Id.* On August 20 and 21, 2012,

Hanson's new counsel also filed a motion to withdraw as counsel. *Id.*; see id. Ex. F. On

August 27, 2012, Hanson filed a pro se motion for voluntary dismissal. *Id.* Exs. E, G.

By order dated September 7, 2012, the First DCA granted the motion to withdraw as

counsel and also dismissed the appeal, given Hanson's pro se motion. *Id.* Exs. E, H.

Hanson thereafter filed numerous pro se motions. In particular, on or about April

26, 2013, Hanson filed, in the state trial court, a pro se motion for post-conviction relief

pursuant to Florida Rule of Criminal Procedure 3.850, claiming he was not informed of a

plea offer. *Id.* Ex. M. On May 6, 2013, the state post-conviction trial court summarily

denied the motion. *Id.* Ex. N. Hanson did not appeal this order.

As indicated above, on January 8, 2013, Hanson filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this Court. Doc. 1. He raises five grounds:

> (1) Petitioner Hanson's rights under the U.S. Constitution, Fifth and
> Fourteenth Amendments, to due process, and Sixth Amendment, to a
> speedy trial, were violated where he had the right to be discharged under
> Florida Rule of Criminal Procedure 3.797(P) as he was arrested on June
> 4, 2011, and not brought to trial until 175 days later. Doc. 1 at 4.

> (2) Petitioner Hanson's rights under the U.S. Constitution, Fifth and
> Fourteenth Amendments, to due process, and Fourth Amendment, to be
> free from illegal search and seizure, were violated when the police
> searched his car while he was under illegal arrest for a traffic infraction
> and when the State Attorney lied to the judge to obtain a sample of his
> DNA. *Id.*

> (3) Petitioner's counsel rendered ineffective assistance by refusing to
> investigate the case, call witnesses, impeach the State's witness, properly
> argue the case, communicate with Hanson, or file motions. *Id.* at 5.

> (4) Violations under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v.
> United States, 405 U.S. 150 (1972), (fraud on the court), where the State

Attorney used perjured testimony and lies in her evidence and argument at trial, and the police officers' account of the events at trial were different from the police report.  *Id.*

(5) Newly discovered evidence of illegal arrest, resulting in the violation of Petitioner Hanson's rights under the Fourth, Fifth, and Fourteenth Amendments, where Hanson was stopped in a traffic stop, charged and arrested for driving with a suspended license, and then searched; he was tried separately and convicted of the felony charge that resulted from the search, but found not guilty on the suspended license charge, so his felony conviction should be invalidated.  *Id.* at 6.

Respondent has filed an answer and exhibits.  Doc. 28.  Hanson has filed a reply with exhibits.  Doc. 32.

The website for the Florida Department of Corrections indicates that Hanson was released from incarceration March 1, 2015.  This federal habeas case is not moot, however, because continuing collateral consequences exist.  *See, e.g.*, Spencer v. Kemna, 523 U.S. 1, 7-8 (1998); Mattern v. Sec'y Dep't Corr., 494 F.3d 1282, 1285 (11th Cir. 2007).

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>,

633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

<u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt.'"  <u>Cullen</u>, 131

S.Ct. at 1398 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford</u>

<u>v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that

was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 131 S.Ct.

at 1388.

Also relevant here, in <u>Strickland v. Washington</u>, the U.S. Supreme Court adopted

a two-part test for ineffective assistance of counsel (IAC) claims:

First, the defendant must show that counsel's performance was deficient.
This requires showing that counsel made errors so serious that counsel
was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*

## Ground 1: Speedy Trial

In his first ground, Petitioner Hanson asserts he has a right to be discharged under Florida Rule of Criminal Procedure 3.191(p) because the State did not bring him

to trial within 175 days of his arrest.  Doc. 1 at 4.  As Respondent points out, however, this ground is not cognizable in federal habeas corpus review.  Doc. 28 at 12-13. "[F]ederal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).

As the Eleventh Circuit has explained, "[t]here are three sources of speedy trial rights for criminal defendants: (1) the Sixth Amendment to the U.S. Constitution; (2) the federal Speedy Trial Act[, 18 U.S.C. §§ 3161-3174]; and (3) state speedy trial rules." Sneed v. Fla. Dep't of Corr., 496 F. App'x 20, 24 (11th Cir. 2012).  The federal Speedy Trial Act does not apply to state court proceedings.  *Id.*; *see* United States v. Bell, 833 F.2d 272, 277 (11th Cir. 1987).  As a Florida state prisoner, Hanson's rights were governed by Florida's speedy trial rules.  *See* Fla. R. Crim. P. 3.191; Sneed, 496 F. App'x at 24.  "These rules are not controlling, however, because they are not based on clearly established federal law, having been promulgated by Florida and not the U.S. Supreme Court."  Sneed, 496 F. App'x at 24; *see* 28 U.S.C. § 2254(d).  "Indeed, questions of state law rarely raise issues of federal constitutional significance and, therefore, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'"  Sneed,

496 F. App'x at 24 (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir.

1983)).  "A violation of Florida's speedy trial rules does not 'go to the fundamental

fairness of the trial' so that it is cognizable in a § 2254 petition."  *Id.* (quoting Davis v.

Wainwright, 547 F.2d 261, 264 (5th Cir. 1977)).

A review of the record reflects that Hanson raised, by pro se filings in the state

court, a speedy trial claim based only on Florida Rule of Criminal Procedure 3.191.  *See*

Doc. 28 Ex. A at 37, 57, 75, 87-88, 90-91.  He subsequently withdrew the first demand,

and it appears he filed the second, third, fourth, and fifth while represented by counsel.

*Id.* at 37, 57-59, 75, 86.  His claim here, to the extent it is based on a violation of the

Florida rules, is not cognizable in federal habeas review because it involves only state

procedural rules, not errors of federal constitutional dimension.  Further, Hanson

dismissed his direct appeal and, therefore, even if his ground here includes more than

the Florida rule, he has not exhausted this ground.

Moreover, even assuming Hanson fairly presented and exhausted a claim

alleging a violation of his Sixth Amendment right to a speedy trial, that claim also fails.

Hanson does not allege any facts to support a showing of prejudice, "which is a

'necessary ingredient' to a constitutional speedy trial claim."  Moore v. McNeil, No.

4:09cv381-SPM/WCS, 2010 WL 4025867, at *4 (N.D. Fla. June 25, 2010); *see* Barker

v. Wingo, 407 U.S. 514, 530 (1972) (holding that balancing test applies when

determining whether defendant has been deprived of right to speedy trial, including four

relevant factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of

his right, and prejudice to the defendant"); Reed v. Farley, 512 U.S. 339, 353 (1994)

(citing Barker and explaining that "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause").

Based on the foregoing, Hanson has not shown the state court's rejection of his claim was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2: Search and Seizure

In his second ground, Hanson asserts his rights to be free from illegal search and seizure were violated when the police searched his car while he was under illegal arrest for a traffic infraction and when the State attorney lied to the judge to obtain a sample of his DNA.  Doc. 1 at 4.   In the state court, trial counsel had filed a motion to suppress the gun found during the search of Hanson's vehicle, arguing the search was illegal under Arizona v. Gant, 556 U.S. 332 (2009), and the traffic stop, and search of the vehicle, should not have extended beyond the time when Hanson was arrested for driving with a suspended license.  Doc. 28 Ex. A at 104-07, Ex. D at 91-93.  The trial court heard the motion during the trial, after the State rested its case, outside the presence of the jury; at the conclusion of the suppression hearing, the court denied the motion.  *Id.* Ex. D at 91-100.  The judge made findings on the record, accepting the testimony of Officer Greenfield, the officer who had stopped Hanson's vehicle and arrested him for driving with a suspended license:

> I'm going to find that Officer Greenfield's testimony was credible on the – I
> believe all of his testimony was, but specifically related to the window tint
> issues.  And having to open the door to manually roll down the window to
> check – I don't know if it was roll down or roll up.  But either way, to roll the
> window so he could get his meter on the window to check the tint and at
> that time that the saw the cannabis inside the vehicle and that gave him
> probable cause to search the rest of the vehicle.  And, therefore, Gant is
> not controlling in this case and I'm going to deny the motion to suppress.

*Id.* at 100.

Regarding the DNA evidence, no motion to suppress was filed.  The state trial court had granted the State's motion to require Hanson to provide a buccal standard for DNA comparison.  Doc. 28 Ex. A at 31-33.  The DNA evidence and testimony was admitted at the trial without objection.  *Id.* Ex. D at 74-91.

As indicated above, after Hanson was convicted and sentenced, he filed a direct appeal; however, he ultimately dismissed that appeal.  Thus, as Respondent indicates, Hanson did not properly exhaust any ground concerning the alleged violation of his rights to be free from illegal search and seizure.  He can not file a second direct appeal in state court.  Therefore, although this ground is technically exhausted, it is procedurally defaulted, and Hanson has not alleged cause and prejudice, or a fundamental miscarriage of justice.  *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("[I]f state court remedies are no longer available, . . . those remedies are technically exhausted, . . . but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court; instead, if the petitioner

procedurally defaulted those claims, the prisoner generally is barred from asserting

those claims in a federal habeas proceeding."). *See also, e.g.*, McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement: "[T]o ensure that

state courts have the first opportunity to hear all claims, federal courts have required a

state prisoner to present the state courts with the same claim he urges upon the federal

courts."); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has

failed to exhaust state remedies that are no longer available, that failure is a procedural

default which will bar federal habeas relief, unless either the cause and prejudice or the

fundamental miscarriage of justice exception is applicable."); Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010) (explaining "[a] federal court may still address the merits of

a procedurally defaulted claim if the petitioner can show cause for the default and actual

prejudice resulting from the alleged constitutional violation" or if fundamental

miscarriage of justice exists because "'a constitutional violation has probably resulted in

the conviction of one who is actually innocent'" (quoting Murray v. Carrier, 477 U.S. 478,

496 (1986))).  Hanson's procedural default bars federal review of this ground.

**Ground 3: IAC – Failure to Investigate, Call Witnesses, Impeach State's
Witnesses, Properly Argue Case, File Motions, and Communicate with Hanson**

In his third ground, Hanson asserts his trial counsel rendered ineffective

assistance by failing to investigate the case, call witnesses, impeach the State's

witness, properly argue the case, file motions, or communicate with Hanson.  Doc. 1 at

5.  As Respondent indicates, Hanson's assertions amount to mere conclusory

allegations, insufficient to raise a constitutional issue in a federal habeas proceeding.

Doc. 28 at 30-31.  Hanson does not indicate what an investigation by counsel would have revealed, which witnesses counsel should have called, which witnesses counsel should have impeached and how, or which motions counsel should have filed.  *See* Doc. 1 at 5.  *See* Hill v. Lockhart, 474 U.S. 52 (1985) (explaining conclusory allegations of ineffective assistance of counsel are insufficient to raise constitutional issue); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.1991) (explaining vague, conclusory, or unsupported allegations do not warrant evidentiary hearing for ineffective assistance of counsel claim); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [of alleged ineffective assistance of counsel], petitioner must proffer evidence that, if true, would entitle him to relief.").  Moreover, as Respondent also points out, Hanson did not exhaust any such claim in state court as he dismissed his Rule 3.850 motion and he did not appeal the denial of any of his other post-conviction motions; therefore, this ground is procedurally defaulted, as Hanson has not shown, or even alleged, cause and prejudice.  *See* Doc. 28 at 31; *see also* Docs. 1 and 32.

In his reply, Hanson does list instances of alleged ineffectiveness, albeit in the context of his argument that "the conflict between he and counsel became so unmanageable that it escalated to the point of verbal abuse between the two and this adversely affected counsel's performance in the following ways":

1.  Counsel failed to communicate or keep contact with Petitioner involving defense preparation;

2.  Counsel failed to investigate whether tag light was really broken which was the probable cause used for the arrest;

3.  Counsel failed to investigate whether the alleged marijuana stated by police to have been in view to authorize a search of the vehicle was tested and was, in fact, marijuana; (Exhibit B).

4.  Counsel neglected to file a motion to suppress evidence of DNA on confiscated handgun; (Exhibit C).

5.  Counsel failed to call exculpatory witnesses (specifically, Agent Adrienne Bell, Crime Laboratory Analyst, Latent Print Section of the FDLE) (Exhibit D).

6.  Counsel failed to subpoena exculpatory eye-witness, Kimberly Edmonds;

7.  Counsel failed to investigate the circumstances surrounding the search of Petitioner's SUV (specifically, Counsel misstated the facts of the initial confrontation with police which demonstrates his lack of diligence in finding the truth of the matter concerning the probable cause for the search);

8.  Counsel refused to impeach State's main witness, Officer Greenfield, with internal affairs complaints.

Doc. 32 at 4-5.  As to the first, second, and sixth instances, Hanson provides nothing more than conclusory statements, and this is insufficient.

As to the third instance, Hanson references an attached exhibit to his reply, labeled "Exhibit B," as support for his claim that defense counsel failed to investigate whether the alleged marijuana found by Officer Greenfield in his car was actually tested and found to be marijuana.  Exhibit B is the defense motion to suppress the firearm. Doc. 32 at Ex. B.  In the motion, counsel asserted, "Officer Greenfield states that the marijuana field tested positive."  *Id.*  It is not clear how this supports Hanson's assertion that defense counsel failed to investigate.  Moreover, the marijuana was not the subject

of the trial; rather, the trial involved whether Hanson, a convicted felon, possessed the gun found in his vehicle.

As to the fourth instance, Hanson asserts defense counsel failed to file a motion to suppress evidence of DNA on the handgun found in his car.  Hanson references Exhibit C to his reply, which is the State's Motion to Compel Buccal Standards and the state trial court's order granting the motion.  Doc. 32 Ex. C.  Although defense counsel did not file a motion to suppress the DNA evidence, nothing indicates such a motion would have proved successful if filed.  *See, e.g.*, Hayes v. State, 660 So. 2d 257, 264-65 (Fla. 1995) ("We take judicial notice that DNA test results are generally accepted as reliable in the scientific community, provided that the laboratory has followed accepted testing procedures that meet the Frye[ v. United States, 293 F. 1013 (D.C. Cir. 1923),] test to protect against false readings and contamination."); Zack v. State, 911 So. 2d 1190, 1198 n.3 (Fla. 2005) (explaining "the PCR method of DNA testing is now generally accepted by the scientific community and is not subjected to Frye testing"); Lemour v. State, 802 So. 2d 402, 406 (Fla. 3d DCA 2001) (concluding "the PCR/STR method [of DNA testing] is established as generally accepted by the relevant scientific community").  Notably, defense counsel did challenge the DNA expert's conclusions through cross-examination at trial.  *See* Doc. 28 Ex. D at 85-90.

As to the fifth instance, Hanson asserts defense counsel failed to call an exculpatory witness, Agent Adrienne Bell, a crime laboratory analyst in the Latent Print Section of FDLE, and he attaches Exhibit D in support of his claim.  Exhibit D is a copy of a Laboratory Report dated June 30, 2011, from the Florida Department of Law

Enforcement, signed by Adrienne Bell, which states that "[n]o latent prints of value for comparison were noted or developed" on the gun.  Doc. 32 Ex. D.  This is not necessarily exculpatory, however, as it simply means no prints were found on the gun. Given the evidence presented by the State – that Hanson's DNA was on the gun and the gun was found in the glove box of his vehicle, under his mail – the lack of finger prints on the gun would have had little impact.  Notably, the DNA expert testified that the "touch DNA" obtained from the gun was possible because it was "a textured area" and "[i]f you touch a textured area, I would expect more of your DNA to be transferred to that item versus a very smooth area because you're taking the skin cells and sloughing them off if it's rough," whereas "if it's really a smooth surface, you might not get so much transfer."  Doc. 28 Ex. D at 83-84.  The expert further testified the DNA on the gun was "due to a person handling the firearm" as there was "a pretty good amount of DNA on this firearm."  *Id.* at 85.

As to the seventh instance, Hanson argues defense counsel failed to investigate the circumstances of the search of Hanson's vehicle and, specifically, defense counsel misstated the facts of the initial confrontation with police.  As indicated above, however, counsel filed a motion to suppress the gun found in Hanson's car, arguing it was the product of an illegal search.  Defense counsel argued at the suppression hearing and Hanson himself testified at the hearing.  The only explanation Hanson gives in support of this claim is his assertion that "Counsel misstated the facts of the initial confrontation with police which demonstrates his lack of diligence in finding the truth of the matter

concerning the probable cause for the search."  A review of the transcript does not support Hanson's explanation.  *See* Doc. 28 Ex. D 91-100.

As to the eighth instance, Hanson argues defense counsel refused to impeach Officer Greenfield with internal affairs complaints.  This also appears conclusory, as Hanson does not offer more to support his claim.  A review of the record reflects defense counsel evidently considered impeaching Officer Greenfield regarding whether he had previous complaints or suspensions, but after questioning the officer on the record just before the trial started, counsel decided not to pursue that line of questioning.  *See* Doc. 28 Ex. D at 9-21.  In particular, Officer Greenfield testified he had two written reprimands, one from March 2011 and one from July 2011, and he had never been suspended from the Tallahassee Police Department.  *Id.* at 13-14, 16.  The officer described the circumstances, neither of which involved Hanson.  *Id.* at 14-16.  At the conclusion of this examination, defense counsel stated:

> Judge, I agree it was something I would have to show motive or bias towards Mr. Hanson.  And I don't think – we heard the sworn testimony.  I don't think it rises to that level.  So I'm not going to – I'm not going to try to impeach him with these incidents.

*Id.* at 22.  Nothing indicates this constitutes ineffective assistance of counsel.

Based on the foregoing, even assuming this ground was exhausted or that Hanson has shown cause and prejudice for the procedural default, he has not shown that any state court ruling rejecting this ground resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C.

§ 2254(d)(1)-(2).  This ground should be denied.

**Ground 4: <u>Brady</u> and <u>Giglio</u> Violations**

In his fourth ground, Hanson asserts violations under <u>Brady</u> and <u>Giglio</u> (fraud on

the court), where the State Attorney used perjured testimony and lies in her evidence

and argument at trial, and the police officers' account of the events at trial were different

from the police report.  Doc. 1 at 5.  As with Ground 3, and as Respondent indicates,

Hanson's assertions here amount to mere conclusory allegations, insufficient to raise a

constitutional issue in a federal habeas proceeding.  Doc. 28 at 32-33.  Moreover, as

Respondent also points out, Hanson did not exhaust any ground concerning alleged

<u>Brady</u> and <u>Giglio</u> violations in state court as he dismissed his Rule 3.850 motion and he

did not appeal the denial of any of his other post-conviction motions.  *See id.* at 33.

Thus, as with Ground 2, this ground is procedurally defaulted, and Hanson has not

alleged cause and prejudice, or a fundamental miscarriage of justice.  The procedural

default bars federal review of this ground.

**Ground 5: Newly Discovered Evidence**

In his fifth ground, Hanson asserts newly discovered evidence of illegal arrest,

where he was stopped in a traffic stop, charged and arrested for driving with a

suspended license, and then searched; he was tried separately and convicted of the

felony charge that resulted from the search, but found not guilty on the suspended

license charge, so his felony conviction should be invalidated.  Doc. 1 at 6.  The "newly

discovered evidence" Hanson points to is his acquittal on the charge of driving with a suspended license.  *Id.*

As Respondent indicates, Hanson filed post-conviction motions in state court raising this issue; however, he has not properly appealed the denial of any of those motions.  Doc. 28 at 33; *see* Doc. 28 Ex. I at 5 (Amended Memorandum of Law in support of Rule 3.850 Motion, filed November 15, 2012, arguing, in pertinent part, "subsequent not guilty verdict in that case [involving charge of driving with a suspended license] invalidates the conviction in this case"), Ex. Q at 2 (Petition for Writ of Habeas Corpus, filed July 31, 2013, arguing "on March 9th, 2012, he was found guilty of being a felon with a firearm, but on July 27th, 2012, he was tried and found not guilty of the predicate D.W.L.S.R.").  Indeed, it appears Hanson dismissed the Rule 3.850 motion.  *See* Doc. 28 Ex. K (Hanson's voluntary dismissal of Rule 3.850 motion, filed February 7, 2013), Ex. L (Order Granting Defendant's Motion to Voluntarily Dismiss Motion for Postconviction Relief, rendered February 18, 2013).  The state trial court dismissed the Petition for Writ of Habeas Corpus for failure to comply with the oath requirement of Rule 3.850.  *Id.* Ex. R.  It does not appear that Hanson filed an appeal in either instance. Accordingly, he has not satisfied the exhaustion requirement for federal habeas review.

Even assuming Hanson satisfied the exhaustion requirement, his claim lacks merit.  Hanson appears to assert here that his conviction for possession of a firearm by a convicted felon should not stand because he was found not guilty in a subsequent trial of the charge of driving with a suspended license, the charge for which he was arrested as a result of the traffic stop during which the gun was found in his vehicle.  Doc. 1 at 6.

As indicated above, however, Officer Greenfield found the gun in Hanson's vehicle as a result of a search that took place after the officer saw marijuana in the vehicle when the officer was testing the windows for illegal tint.  The state trial court denied the defense motion to suppress the gun, finding the discovery of the marijuana in the vehicle, not the arrest of Hanson for driving with a suspended license, gave the officer probable cause to search the vehicle.  Doc. 28 Ex. D at 100.

Hanson has not shown that any state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Cliff O. Hanson is not entitled to federal habeas relief.  The § 2254 petition (Doc. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Hanson's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.    The Clerk shall substitute Julie L. Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on September 28, 2015.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.